**MCGUIREWOODS LLP**
ALICIA A. BAIARDO SBN #254228
abaiardo@mcguirewoods.com
ALEXANDRA S. FARLEY SBN #339924
afarley@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

**MCGUIREWOODS LLP**
BRIAN E. PUMPHREY
(*pro hac vice forthcoming*)
bpumphrey@mcguirewoods.com
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: 804.775.1000
Facsimile: 804.775.1061

**MCGUIREWOODS LLP**
MELISSA O. MARTINEZ
(*pro hac vice forthcoming*)
mmartinez@mcguirewoods.com
500 East Pratt Street, Suite 1000
Baltimore, MD 21202-3169
Telephone: 410.659.4400
Facsimile: 410.659.4599

**MCGUIREWOODS LLP**
MOLLY M. WHITE SBN #171448
mwhite@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

*Attorneys for NewRez, LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon f/k/a The Bank of New York as Indenture Trustee for CWHEQ Revolving Home Equity Loan Trust, Series 2007-D*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RUTZ, individually and as representative of the classes,<br><br>Plaintiff,<br><br>vs.<br><br>NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING and THE BANK OF NEW YORK MELON f/k/a THE BANK OF NEW YORK AS INDENTURE TRUSTEE FOR CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2007-D,<br><br>Defendants. | Case No. 3:25-cv-02671-BAS-DDL<br><br>Chief District Judge: The Hon. Cynthia Bashant<br>Magistrate Judge: Hon. David D. Leshner<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 27, 2026<br><br>Place: Courtroom 12B – 12th Floor<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that, on Friday, March 27, 2026, or as soon thereafter as this matter may be heard before the Hon. Cynthia Bashant in Courtroom 12B, United States District Court, Southern District of California, located at the James M. Carter and Judith N. Keep, United States Courthouse, 333 West Broadway, San Diego, CA 92101, Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon f/k/a The Bank of New York as Indenture Trustee for CWHEQ Revolving Home Equity Loan Trust, Series 2007-D (together, "Defendants"), hereby move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of Plaintiff Kevin Rutz's ("Plaintiff") Amended Class Action Complaint (the "Complaint") with prejudice.

This Motion is made following the conference of counsel that took place on February 10, 2026.

This Motion is based upon this Notice of Motion and Motion to Dismiss, the supporting Memorandum of Points and Authorities attached hereto, the pleadings, records and files in this action, all matters of which the Court may take judicial notice, and such further oral or documentary evidence and argument as may be presented at or before the hearing and any other matter the Court may deem appropriate.

1  DATED: February 17, 2026          MCGUIREWOODS LLP

2

3

4                                    By: /s/ *Alicia A. Baiardo*

5                                        Alicia A. Baiardo
                                         Molly M. White
6                                        Brian E. Pumphrey (*pro hac vice
                                         forthcoming*)
7                                        Melissa O. Martinez (*pro hac vice
                                         forthcoming*)
8
                                         *Attorneys for Defendants NewRez LLC*
9                                        *d/b/a Shellpoint Mortgage Servicing and*
                                         *The Bank of New York Mellon f/k/a The*
10                                       *Bank of New York as Indenture Trustee*
                                         *for CWHEQ Revolving Home Equity*
11                                       *Loan Trust, Series 2007-D*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................... iii

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................ 3

III.  LEGAL STANDARD .......................................................................... 4

IV.   LEGAL ARGUMENT ......................................................................... 5

    A.   Plaintiff's Waiver Theory Fails for Multiple Reasons ......................... 5

        1.   Plaintiff's Reconstituted TILA Waiver Theory Cannot Form a Basis for His Class Claims ................................................. 5

        2.   Plaintiff's Waiver Theory Fails Because the HELOC Agreement and Any Modification of Its Terms is Subject to the Statute of Frauds ...................................................... 8

        3.   Plaintiff Cannot Ground His Claims In a Waiver Theory Because He Is Improperly Using Waiver as a "Sword" Rather than a "Shield" ................................................ 9

    B.   The Lack of Monthly Statements Was Not the Cause of Plaintiff's Failure to Pay His HELOC and Dooms All of Plaintiff's Claims ................................................................. 10

    C.   Plaintiff Fails to State Federal and State Debt Collection Claims (Counts I, II, and III) ................................................ 11

        1.   Plaintiff's Debt Collection Claims All Fail Because There is no Underlying Prohibited Act Since the Ninth Circuit Does Not Consider a Notice of Intent to Foreclose "Debt Collection" ......................................................... 12

        2.   Plaintiff's Debt Collection Claims Fail as to BNYM Because It Is Not Considered a Debt Collector ......................... 14

        3.   Plaintiff's Second Count for Violation of 15 U.S.C. § 1692 (e)(2)(a) Fails Because Judicially Noticeable Documents Confirm Defendants Are Not Seeking to Collect Interest Accrued Prior to Bankruptcy Filing ................................. 14

    D.   Plaintiff Fails to Plead A UCL Claim (Count IV) ............................. 16

        1.   Plaintiff Cannot Meet the UCL's Threshold Requirements ....... 16

        2.   Plaintiff Fails to Allege Facts Sufficient to State a Claim

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-02671-BAS-DDL

Under Any of the UCL Prongs ..................................................18

E.    Plaintiff's RESPA Claim (Count VI) Against Shellpoint Fails Because He Does Not Plead the Essential Elements ...........................19

1.    Plaintiff's RESPA Claim Is Inadequately Pled .........................19

2.    RESPA Liability Cannot Attach to the QWR Because It Does Not Relate to Servicing of the Loan.................................20

3.    Plaintiff Fails to Plead Recoverable Damages Under RESPA ........................................................................22

F.    Plaintiff's Declaratory Judgment Claim (Count V) Against BNYM Is Not Tied to A Viable Underlying Cause of Action ............24

V.    CONCLUSION ...............................................................25

CERTIFICATE OF SERVICE ....................................................1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-02671-BAS-DDL

1

# <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

*Aazami v. Wells Fargo Bank, N.A.*,
   No. 3:17-cv-01564-BR, 2019 WL 281286 (D. Or. Jan. 22, 2019) .............19, 21

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ...........................................................................11

*Apodaca v. HSBC Bank USA, Nat. Ass'n*,
   No. 10CV307 WQH, 2010 WL 1734945 (S.D. Cal. Apr. 27, 2010) .................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................4, 24

*Bird v. Real Time Resols., Inc.*,
   183 F. Supp. 3d 1058 (N.D. Cal. 2016)..............................................................13

*Brooks v. Cama Self Directed IRA, LLC*,
   No. CV JKB-18-2299, 2019 WL 418412 (D. Md. Jan. 31, 2019)......................9

*Buttram v. Owens–Corning Fiberglas Corp.*,
   16 Cal. 4th 520 (1997)........................................................................................11

*Chabner v. United of Omaha Life Ins. Co.*,
   225 F.3d 1042 (9th Cir. 2000) ...........................................................................17

*City of Reno v. Netflix, Inc.*,
   52 F.4th 874 (9th Cir. 2022)...............................................................................24

*Daro v. Super. Ct.*,
   151 Cal. App. 4th 1079 (2007)...........................................................................16

*Delino v. Platinum Cmty. Bank*,
   628 F. Supp. 2d 1226 (S.D. Cal. 2009) ..........................................................6, 19

*Derusseau v. Bank of Am. N.A.*,
   No. 11 CV 1766 MMA JMA, 2011 WL 5975821 (S.D. Cal. Nov.
   29, 2011)..............................................................................................................20

1
2   *Diaz v. Nationstar Mortg. LLC*,
       No. 17CV1607-MMA, 2018 WL 1071699 (S.D. Cal. Feb. 27, 2018) .............. 13
3   *Dunne v. JPMorgan Chase Bank, N.A.*,
       No. CV 13-00919 DPP, 2014 WL 5147961 (C.D. Cal. Oct. 14,
4      2014) ................................................................................................. 8
5
6   *Fitzgerald v. Bosco Credit, LLC*,
       No. 16-cv-01473-MEJ, 2017 WL 3602482 (N.D. Cal. Aug. 21,
7      2017) ............................................................................................... 12
8   *Gonzalez v. Specialized Loan Servicing, LLC*,
       691 F. Supp. 3d 1162 (C.D. Cal. 2023) ............................................ 13
9
10  *Granados v. Wharton Note Co.*,
       No. 23-CV-02948-HSG, 2024 WL 5320157 (N.D. Cal. Dec. 20,
11     2024) ............................................................................................... 16
12  *Groves v. Prickett*,
       420 F.2d 1119 (9th Cir. 1970) .......................................................... 9
13
14  *Guidi v. Paul Fin., LLC*,
       2014 U.S. Dist. LEXIS 2249 (N.D. Cal. Jan. 7, 2014) .................... 22
15
16  *Hart v. Select Portfolio Servicing, Inc.*,
       No. 24-36, 2025 WL 711536 (9th Cir. Mar. 5, 2025) ...................... 14
17
18  *Henson v. Santander Consumer USA Inc.*,
       582 U.S. 79 (2017) ................................................................... 13, 14
19
20  *Hodges v. Newrez LLC*,
       No. 25-CV-10147-ADB, 2026 WL 194652 (D. Mass. Jan. 26, 2026) ............... 6
21
22  *Householder v. Specialized Loan Servicing LLC*,
       No. CV 21-1008-DMG (SKX), 2021 WL 6104179 (C.D. Cal. June
23     3, 2021) ........................................................................................... 24
24  *Hueso v. Select Portfolio Servicing, Inc.*,
       527 F. Supp. 3d 1210 (S.D. Cal. 2021) ............................................ 22
25
26  *Izsak v. Wells Fargo Bank, N.A.*,
       No. C 13-05362 SI, 2014 WL 262126 (N.D. Cal. Jan. 23, 2014) ...................... 8
27
28

*Junod v. Dream House Mortg. Co.*,
  No. CV 11-7035-ODW(VBKx), 2012 WL 94355 (C.D. Cal. Jan. 5,
  2012) ...................................................................................................... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..................................................... 15, 21

*Kilker v. Real Time Resols., Inc.*,
  No. 4:25-CV-2456-YGR, 2025 WL 2492961 (N.D. Cal. June 2,
  2025) ...................................................................................................... 11

*Kwikset Corp. v. Super. Court*,
  51 Cal. 4th 310 (2011) ......................................................................... 16

*Lal v. Am. Home Serv., Inc.*,
  680 F. Supp. 2d 1218 (E.D. Cal. 2010) ....................................... 23, 24

*Linderman v. NewRez LLC*,
  No. 25 C 4271, 2025 WL 3037795 (N.D. Ill. Oct. 31, 2025 ............... 6

*Lynch v. Cal. Coastal Comm'n*,
  396 P.3d 1085 (Cal. 2017) ..................................................................... 8

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) ............................................................. 17

*Marquette v. Bank of Am., N.A.*,
  No. 13cv2719-WQH, 2015 WL 461852 (S.D. Cal. Feb 4, 2015) ...... 10

*Martinez v. Specialized Loan Servicing, LLC*,
  No. 2:24-CV-1387 WBS AC, 2025 WL 3030982 (E.D. Cal. Oct. 30,
  2025) ......................................................................................... 7, 10, 16, 17

*McCoy v. Wells Fargo Bank, N.A.*,
  No. 1:20-CV-00176-CL, 2021 WL 4451423 (D. Or. July 21, 2021 ... 21

*McGwire v. Specialized Loan Servicing LLC*,
  No. EDCV 24-0611 JGB, 2024 WL 4783827 (C.D. Cal. Sept. 5,
  2024) ...................................................................................................... 13

*Medassets Net Revenue Sys., LLC v. Downey Reg'l Med. Ctr.*,
  No. 2:13-cv-01936-ODW, 2014 WL 1607633 (C.D. Cal. Apr. 22,
  2014) ........................................................................................................ 9

*Medina v. Wells Fargo Bank,*
      No. EDCV19883PSGKKX, 2019 WL 6140481 (C.D. Cal. Sept. 17,
      2019) .................................................................................................... 20

*Medrano v. Flagstar Bank, FSB,*
      704 F.3d 661 (9th Cir. 2012) ....................................................... 19, 20

*Moody v. NewRez LLC,*
      No. 1:24-CV-5406-ELR-CMS, 2025 WL 3909973 (N.D. Ga. Dec.
      12, 2025) .................................................................................................. 6

*Naimoli v. Ocwen Loan Serving, LLC,*
      613 F. Supp. 3d 681 (W.D.N.Y. 2020 ................................................. 23

*Naranjo v. Bank of Am.,*
      No. EDCV 23-546-KK-ASX, 2024 WL 1651914 (C.D. Cal. Feb.
      23, 2024) .................................................................................................. 6

*Neff v. Cap. Acquisitions & Mgmt. Co.,*
      238 F. Supp. 2d 986 (N.D. Ill. 2002 .................................................... 7

*Oya v. Wells Fargo Bank, N.A.*
      No. 3:18-CV-01999-H-BGS, 2018 WL 5761486 (S.D. Cal. Nov. 2,
      2018) ...................................................................................................... 11

*Pacini v. Nationstar Mortg., LLC,*
      No. C 12-04606 SI, 2013 WL 2924441 (N.D. Cal. Jun. 13, 2013) ..... 8

*Peasley v. Verizon Wireless (VAW) LLC,*
      364 F. Supp. 2d 1198 (S.D. Cal. 2005) ................................................ 9

*Price v. Grand Bank For Sav., FSB,*
      No. 18CV440-LAB (NLS), 2018 WL 4852198 (S.D. Cal. Oct. 4,
      2018) ...................................................................................................... 17

*Punian v. Gillette Co.,*
      No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15,
      2016) ...................................................................................................... 18

*Quach v. Cal. Com. Club, Inc.,*
      551 P.3d 1123 (Cal. 2024) ..................................................................... 8

*Ramsour v. JP Morgan Chase Bank*,
    No. 11cv0116-WQH-BLM, 2012 WL 6004230 (S.D. Cal. Nov. 30,
    2012) ................................................................................................ 10

*Rennie & Laughlin, Inc. v. Chrysler Corp.*,
    242 F.2d 208 (9th Cir. 1957) ............................................................. 9

*Richards v. NewRez LLC*,
    No. CV ELH-20-1282, 2021 WL 1060286 (D. Md. Mar. 18, 2021) .................. 7

*Robinson v. Bank of Am., N.A.*,
    No. 21-CV-00110-AJB-DEB, 2022 WL 837073 (S.D. Cal. Mar. 21,
    2022) ......................................................................................... 22, 23

*Rubio v. Cap. One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ......................................................... 16

*Secrest v. Sec. Nat'l Mortg. Loan Tr.*
    *2002-2*, 84 Cal. Rptr. 3d 275 (Ct. App. 2008) ............................... 7, 8

*Silvia v. Intel Advantage, LLC*,
    No. 20-cv-1157-WQH, 2021 WL 5862448 (S.D. Cal. Jan. 20, 2021) ........*passim*

*Smith v. Specialized Loan Servicing, LLC*,
    No. 16CV2519-GPC(BLM), 2017 WL 1711283 (S.D. Cal. May 3,
    2017) ......................................................................................... 22, 23

*Tam v. Qualcomm, Inc.*,
    300 F. Supp. 3d 1130 (S.D. Cal. 2018) ............................................. 4

*Tamburri v. Suntrust Mortg., Inc.*,
    No. C–11–2899 EMC, 875 F.Supp.2d 1009 (N.D. Cal. June 21,
    2012) ......................................................................................... 20

*Taylor v. Bosco Credit, LLC*,
    No. 18-CV-06310-JSC, 2018 WL 6511150 (N.D. Cal. Dec. 11,
    2018) ......................................................................................... 10

*Thompson v. Home Depot. Inc.*,
    No. 07cv1058 IEG WMC, 2007 WL 2746603 (S.D. Cal. Sept. 18,
    2007) (UCL) ................................................................................ 10

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ........................................................... 21

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

*Vien-Phuong Thi Ho v. ReconTrust Co., NA*,
   858 F.3d 568 (9th Cir. 2017) ............................................................................ 12

*Walls v. Wells Fargo Bank, N.A.*,
   276 F.3d 502 (9th Cir. 2002) .............................................................................. 7

*Watson v. Bank of Am., N.A.*,
   No. 16cv513-GPC(MDD), 2016 WL 3552061 (S.D. Cal. June 30,
   2016) ................................................................................................................ 19

*Weiss v. Wells Fargo Bank, N.A.*,
   No. 19 C 4947, 2020 WL 469615 (N.D. Ill. Jan. 29, 2020) .............................. 21

**Statutes**

12 U.S.C. § 2605 ....................................................................................... 18, 19, 20

15 U.S.C. § 1637 ............................................................................................... 5, 6

15 U.S.C. § 1641 .................................................................................................. 6

15 U.S.C. § 1692 ................................................................................... 11, 12, 14

Cal. Civ. Code § 2922 .......................................................................................... 8

Cal. Civ. Code § 1788.17 .................................................................................... 11

Cal. Civ. Code § 1788.30(f) ................................................................................ 12

**Other Authorities**

12 C.F.R. § 1024.36 ...................................................................................... 18, 20

12 C.F.R. § 1026.7 ............................................................................................... 5

28 Am. Jur. 2d Estoppel and Waiver § 30 ............................................................ 9

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 24

# I.    **INTRODUCTION**

Plaintiff Kevin Rutz ("Plaintiff") has been in default on his home equity line of credit ("HELOC") for at least fifteen years. In an effort to avoid his debt, Plaintiff brings this lawsuit against his loan servicer, Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), and debt owner, Defendant The Bank of New York Mellon f/k/a The Bank of New York as Indenture Trustee for CWHEQ Revolving Home Equity Loan Trust, Series 2007-D ("BNYM") (together with Shellpoint, "Defendants"). This Court should dismiss his First Amended Complaint because it remains predicated on purported violations of Truth in Lending Act ("TILA")—under which Plaintiff has no viable cause of action against Defendants.

Plaintiff's original complaint was based a slightly different but similarly untenable theory that his counsel have been asserting in other cases around the country—that Defendants could not enforce the underlying debt because Defendants failed to send Plaintiff monthly statements as required by TILA. In the face of intervening decisions rejecting this theory, Plaintiff chose to file a First Amended Complaint ("FAC"), which pivots to now allege that Defendants have somehow "waived" the interest due on Plaintiff's loan *because they failed to send Plaintiff monthly statements under TILA*. Plaintiff cannot ground his claims in TILA when he cannot bring a TILA claim against Defendants and he cannot use waiver as a predicate for affirmative claims that would impose liabilities upon Defendants.

As explained below, Plaintiff's six claims are all subject to dismissal.

**First**, as a threshold problem, Plaintiff cannot bring claims grounded in an alleged violation of TILA because it only applies to "creditors," and neither Defendant qualifies as a creditor here.

**Second**, Plaintiff's attempt to repackage this failed TILA theory as some kind of a "waiver" fares no better. Common law waiver is barred by the statute of frauds, which covers Plaintiff's HELOC.

**Third**, under well-established California law, waiver can only be used as a

"shield" to preclude the assertion of legal rights, not as a "sword" to impose legal duties that do not otherwise exist. Yet that is precisely what Plaintiff seeks to do here, arguing that waiver can be the basis of various causes of action, including the violation of federal and state statutes by seeking to enforce that debt.

*Fourth*, all of Plaintiff's claims must be dismissed because he cannot prove causation; indeed, it is his own failure to make payments that caused his injury. Plaintiff has been aware of his default since at least 2010 and failed to cure it.

*Fifth*, Plaintiff's federal Fair Debt Collection Practices Act ("FDCPA") and corresponding California Rosenthal Fair Debt Collection Practices Act ("RFDCPA") claims fail because foreclosure-related activity—including notices of default and intent to accelerate—does not constitute debt collection under these statutes. Additionally, BNYM is not a debt collector under the FDCPA because it owns the loan and collects for its own account, not "for another."

*Sixth*, Plaintiff's Unfair Competition Law ("UCL") claim fails at the threshold: Plaintiff lacks standing and there is no predicate unlawful act to support the claim or unfair prong pled.

*Seventh*, Plaintiff's individual Real Estate Settlement Procedures Act ("RESPA") claim is deficient because he fails to adequately plead the elements of a RESPA violation as the purported Qualified Written Request ("QWR") does not relate to servicing as that term is defined and thus does not trigger a duty to respond. His claim also fails because he cannot establish any recoverable damages.

*Finally*, Plaintiff's declaratory judgment claim against BNYM fails because it is not tied to any viable underlying cause of action.

Because the defects are legal and incurable, the Court should dismiss the FAC with prejudice.

## II.    FACTUAL[1] AND PROCEDURAL BACKGROUND

In May 2007, Plaintiff purchased a home in Oceanside, California. Dkt. 13 ("FAC") ¶ 41.  To finance the purchase, Plaintiff used an 80/20 mortgage structure, consisting of a primary mortgage and a HELOC. *Id.* ¶ 42.  The HELOC—originated by a non-defendant lender—was in the amount of $177,000. *Id.* ¶¶ 42, 48-49.

In May 2012, Plaintiff filed for Chapter 7 bankruptcy and received a discharge.  *Id.* ¶ 45.  After the discharge, Plaintiff stopped receiving monthly statements for his HELOC. *Id.* ¶ 47.

In April 2016, Plaintiff filed for Chapter 13 bankruptcy.  *Id.* ¶ 50.  SLS filed a proof of claim in Plaintiff's Chapter 13 bankruptcy which stated that the balance of Plaintiff's HELOC was $176,747.62 and showed no interest was past due on the loan at that point. *Id.* ¶ 51.  Following his Chapter 13 bankruptcy discharge, Plaintiff alleges again that he stopped receiving monthly statements for his HELOC.  *Id.* ¶ 52.

In 2021, Plaintiff received a notice from SLS stating that his HELOC was in default and would be foreclosed upon if he did not pay the outstanding balance.  *Id.* ¶ 55.  SLS sent him documents showing it assessed interest on his HELOC for periods during which monthly statements were not sent. *Id.* ¶ 57. For example, on February 3, 2023, SLS sent Plaintiff a payoff statement that reflected a total amount due of $308,025.38, which included $129,253.89 in interest.  *Id.* ¶ 58.

Plaintiff alleges he sent a Qualified Written Request ("QWR") in May 2023 to SLS disputing the balance owed and asking SLS to substantiate the amount owed. *Id.*  ¶ 61.  He continues that SLS allegedly refused to remove the interest assessed on the HELOC or provide him with the requested information.  *Id.*  ¶ 62.[2]

---

[1] The following facts are taken as true for the purposes of this Motion only.

[2] However, the May 2023 correspondence—which was not attached to the Complaint—does not substantiate these allegations.

Following its acquisition of SLS in 2024, Shellpoint began servicing Plaintiff's loan.  *Id.*  ¶ 63.  On November 5, 2024, Plaintiff received a Notice of Default and Intent to Accelerate his HELOC, informing Plaintiff he needed to pay $194,134.06 to avoid foreclosure.  *Id.* ¶¶ 64-65.  As a result of Shellpoint's conduct, Plaintiff alleges he has suffered financial and emotional harm, including lost home equity and emotional distress.

Plaintiff filed his original complaint on October 8, 2025 asserting class claims against both Defendants for: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788.17; and (3) violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*, class claims against BNYM for (4) Breach of Contract and (5) Declaratory Judgment, 28 U.S.C. § 2201 ("Class Claims") and an individual claim against Shellpoint for (6) violation of Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.36(d).  Defendants timely responded by filing a motion to dismiss. Pursuant to the parties' stipulated briefing schedule, Plaintiff chose to file his FAC on January 13, 2026 rather than oppose Defendants' motion to dismiss.  The FAC dropped Plaintiff's breach of contract claim against BNYM, dropped his allegation that Defendants violated the fraudulent prong of the UCL and added an additional class claim for violation of the FDCPA, 15 U.S.C. § 1692e against both Defendants.

## III.    LEGAL STANDARD

A court must dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Although the court must accept as true the complaint's allegations, it need not accept legal conclusions or unreasonable inferences. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

1  elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. "Further, the

2  Court need not accept as true 'legal conclusions' contained in the complaint." *Tam*

3  *v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1137 (S.D. Cal. 2018) (citing *id.* at 677).

4  

### IV. **LEGAL ARGUMENT**

5      Plaintiff's FAC fails for many of the same reasons his original complaint

6  failed. Most critically, he cannot resuscitate his TILA theory by turning it into a

7  "waiver" argument. Plaintiff's underlying theory remains a nonstarter because

8  TILA only applies to "creditors"—and neither Defendant here is a statutorily

9  covered creditor and so all of his Class Claims must fail. In addition, there can be no

10  waiver of obligations set forth in a contract subject to the statute of frauds. Further,

11  waiver cannot be used as a "sword" to impose duties on Defendants that do not

12  otherwise exist. Additionally, the Class Claims fail because any damages have been

13  caused by Plaintiff's failure to make payments on his loan **not** the absence of

14  statements. As further explained below, the Court should also dismiss the FAC for

15  additional reasons as well including that this foreclosure-related activity is not an

16  attempt to collect a debt and Plaintiff's QWR is not related to servicing.

17  **A.    Plaintiff's Waiver Theory Fails for Multiple Reasons**

18  
19  **1.    Plaintiff's Reconstituted TILA Waiver Theory Cannot Form a Basis for His Class Claims**

20      The flawed syllogism upon which the claims of the FAC is premised is as

21  follows: TILA required Defendants to send statements; Defendants failed to send

22  statements; therefore, Defendants have waived their right to collect interest during

23  the period in which they failed to send statements as required by TILA. This premise

24  fails because there is no viable TILA claim undergirding any of Plaintiff's claims.[3]

25      Plaintiff wholly grounds his claims in the requirement that Defendants must

26  

27  ---

[3] As explained below, Plaintiff's waiver theory is additionally problematic because

28  it cannot be used to impose legal duties.

provide statements under TILA; indeed, Plaintiff fails to identify any source of obligation to send statements other than TILA.  FAC ¶ 54 ("Under federal law, SLS was required to provide statements for any billing cycle at the end of which the consumer owed an outstanding balance.") (citing 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7); FAC ¶ 30 ("SLS implemented this policy even though TILA has always required mortgage servicers to send monthly statements to HELOC borrowers, regardless of their bankruptcy status. 15 U.S.C. § 1637(b)."); *id*. ¶ 6 ("SLS's failure to send Plaintiff monthly statements resulted in waiver of the interest charges.").

But Plaintiff's underlying theory remains a nonstarter because TILA only applies to "creditors."  Neither Defendant originated Plaintiff's HELOC, and it is well-settled that (1) mortgage servicers that do not also own the loan are not "creditors," and (2) an assignee can only be liable under TILA if the violation is apparent from the face of the loan disclosures.[4]  Therefore, neither Defendant can be liable under TILA.  *Naranjo v. Bank of Am.*, No. EDCV 23-546-KK-ASX, 2024 WL 1651914, at *4 (C.D. Cal. Feb. 23, 2024) (A "servicer cannot be held liable under TILA unless the servicer also owns the subject loan"); *Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1233 (S.D. Cal. 2009) (no TILA claim against where the plaintiff did not allege a TILA violation apparent from the face of the disclosure statement).

Courts across the country have confirmed—and continue to confirm—that these types of claims are not viable where TILA does not provide a viable cause of action against defendants, rejecting these claims brought by the same counsel in other states.  *Hodges v. Newrez LLC*, No. 25-CV-10147-ADB, 2026 WL 194652, at

---

[4] A TILA claim "may be maintained against any assignee of such creditor only when the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement.  15 U.S.C. § 1641(a).  Here, the alleged failure to provide subsequent statements showing the accrual of interest is not a violation that is "apparent on the face of the disclosure statement."

*5 (D. Mass. Jan. 26, 2026) ("Plaintiff has not identified a creditor or other entity who violated § 1637(b) and may not remedy this issue by improperly using the FDCPA to enforce the alleged TILA violation against Defendants."); *Moody v. NewRez LLC*, No. 1:24-CV-5406-ELR-CMS, 2025 WL 3909973, at *10 (N.D. Ga. Dec. 12, 2025) ("Because I have concluded that the alleged TILA violations are not actionable against Shellpoint, I do not believe that those alleged violations can form the basis of the class claim under RESPA against Shellpoint."); *see also Linderman v. NewRez LLC*, No. 25 C 4271, 2025 WL 3037795, at *4 (N.D. Ill. Oct. 31, 2025), *reconsideration denied,* No. 25 C 4271, 2026 WL 63338 (N.D. Ill. Jan. 8, 2026) ("At bottom, 'the FDCPA does not place an affirmative obligation on a debt collector to . . . send monthly statements,' so its failure to do so is not unfair, deceptive, or misleading under the FDCPA or ICFA.") (alteration in original) (quoting *Neff v. Cap. Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 993 (N.D. Ill. 2002), *aff'd*, 352 F.3d 1118 (7th Cir. 2003)) (dismissing claims because FDCPA does not place an affirmative obligation on a debt collector to send monthly statements and so cannot predicate deceptive or unfair practices allegations on non-existent obligation under TILA); *Richards v. NewRez LLC*, No. CV ELH-20-1282, 2021 WL 1060286, at *28 (D. Md. Mar. 18, 2021) (dismissing FDCPA claim against same servicer based upon alleged failure to provide timely periodic statements under TILA and finding "courts have consistently ruled" the FDCPA cannot be used as an enforcement mechanism for TILA); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002) ("[t]o permit a simultaneous claim under the FDCPA would allow through the back door what [the plaintiff] cannot accomplish through the front door—a private right of action"); *Martinez v. Specialized Loan Servicing, LLC*, No. 2:24-CV-1387 WBS AC, 2025 WL 3030982, at *5 (E.D. Cal. Oct. 30, 2025) (dismissing FDCPA claim based on SLS charging interest despite failing to provide any loan correspondence between 2008 and 2023).

　　　TILA plainly does not apply to Defendants and therefore Plaintiff cannot

bring TILA-derivative claims.  Accordingly, Plaintiff cannot predicate his claims based upon the argument that Defendants *waived* their right to seek interest by failing to send monthly statements as purportedly required by TILA.  FAC ¶¶ 6, 30, 54 (alleging Defendants obligated under federal law to provide statements).

### 2. Plaintiff's Waiver Theory Fails Because the HELOC Agreement and Any Modification of Its Terms is Subject to the Statute of Frauds

A mortgage or deed of trust is subject to the statute of frauds. *Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2*, 84 Cal. Rptr. 3d 275, 282 (Ct. App. 2008), *as modified on denial of reh'g* (Nov. 3, 2008) (citing Cal. Civ. Code § 2922) ("A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property.").  An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds and must be in writing.  *Id.* at 275.  "The statute of frauds plainly precludes an oral waiver in the case of deeds of trusts and any modification to a deed of trust or promissory note must be in writing." *Izsak v. Wells Fargo Bank, N.A.*, No. C 13-05362 SI, 2014 WL 262126, at *3 (N.D. Cal. Jan. 23, 2014) (internal citation omitted); *see also Pacini v. Nationstar Mortg., LLC*, No. C 12-04606 SI, 2013 WL 2924441, at *7 (N.D. Cal. Jun. 13, 2013) (applying the statute of frauds to plaintiff's claim that defendant waived performance under the deed of trust).

Here, under the HELOC agreement, Defendants are entitled to receive monthly payments from Plaintiff, including interest.  Plaintiff alleges that he is in default and stopped paying his mortgage long before he stopped receiving statements. He has not fulfilled his payment obligations under the HELOC.  Plaintiff does not allege that his obligation to make payments has been modified in writing.  Therefore, Plaintiff has failed to allege that Defendants somehow waived the contractual right to collect interest without running afoul of the statute of frauds.

3.      **Plaintiff Cannot Ground His Claims In a Waiver Theory Because He Is Improperly Using Waiver as a "Sword" Rather than a "Shield"**

"To establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it." *Quach v. Cal. Com. Club, Inc.*, 551 P.3d 1123, 1137 (Cal. 2024) (citing *Lynch v. Cal. Coastal Comm'n*, 396 P.3d 1085, 1088 (Cal. 2017)).  But in California, waiver only operates defensively; a party cannot impose a duty upon another by simply asserting waiver.  *See Dunne v. JPMorgan Chase Bank, N.A.*, No. CV 13-00919 DPP, 2014 WL 5147961, at *3 (C.D. Cal. Oct. 14, 2014) ("While waiver 'can preclude the assertion of legal rights, it cannot be used to impose legal duties.'") (quoting *Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970)); *Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1201 (S.D. Cal. 2005) (rejecting the plaintiff's argument that Verizon waived its right under the Fair Credit Reporting Act to be notified of plaintiff's dispute by a consumer reporting agency, when plaintiff raised his dispute with Verizon directly rather than going through a consumer reporting agency, and Verizon took no action with respect to his dispute); *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 210 (9th Cir. 1957) ("[I]t is settled that waiver can be employed only for defensive purposes.  It can preclude the assertion of legal rights but it cannot be used to impose legal duties.  The shield cannot serve as a sword."); *cf. Medassets Net Revenue Sys., LLC v. Downey Reg'l Med. Ctr.*, No. 2:13-cv-01936-ODW, 2014 WL 1607633, at *10 (C.D. Cal. Apr. 22, 2014) ("But it is well settled that a party may not use equitable estoppel as a sword 'to work a positive gain.'") (quoting 28 Am. Jur. 2d Estoppel and Waiver § 30)).

Plaintiff grounds his Class Claims in allegations that Defendants have waived their right to collect interest by not sending him monthly statements.  This runs afoul

1    of the rule that waiver cannot be used to *impose* legal duties.  Accordingly, the Court
2    must dismiss the Class Claims based upon their waiver theory.[5]

3    **B.    The Lack of Monthly Statements Was Not the Cause of Plaintiff's Failure to Pay His HELOC and Dooms All of Plaintiff's Claims**
4

5    To the extent Plaintiff seeks actual damages on his federal and state claims,
6    he must show causation.  *Ramsour v. JP Morgan Chase Bank*, No. 11cv0116-WQH-
7    BLM, 2012 WL 6004230, at *5 (S.D. Cal. Nov. 30, 2012) (FDCPA); *Silvia v. Intel
8    Advantage, LLC*, No. 20-cv-1157-WQH, 2021 WL 5862448, at *4 (S.D. Cal. Jan.
9    20, 2021) (RFDCPA); *Thompson v. Home Depot. Inc.*, No. 07cv1058 IEG WMC,
10   2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (UCL); *Marquette v. Bank of
11   Am., N.A.*, No. 13cv2719-WQH, 2015 WL 461852, at *13-14 (S.D. Cal. Feb 4, 2015)
12   (RESPA).

13   Plaintiff concedes he was in default on his loan in 2010—long before he
14   declared bankruptcy, SLS filed its proof of claim, or Plaintiff allegedly stopped
15   receiving monthly statements.  FAC ¶¶ 44, 50.  He acknowledged in both his 2012
16   and 2016 bankruptcy filings that the debt still existed.  He has been aware since at
17   least 2021 that the loan was not extinguished by virtue of his bankruptcy filing,
18   interest was still accruing, and Defendants sought to collect it.

19   Defendants' alleged conduct—filing a proof of claim showing no accrued
20   interest and then not providing ongoing monthly statements showing the subsequent
21

22   _____
23   [5] Plaintiff's FAC references *Brooks v. Cama Self Directed IRA, LLC*, No. CV JKB-18-2299, 2019 WL 418412 (D. Md. Jan. 31, 2019) to support his allegation that SLS'
24   failure to send monthly statements resulted in a waiver of interest charges.  FAC ¶
25   6. Setting aside that this is an out-of-circuit, unpublished district court case, the court there found that "[t]he cessation of monthly statements alone is not enough to
26   establish waiver; rather, the totality of the circumstances must be sufficient to support a finding of waiver under state contract law principles."  *Brooks*, 2019 WL
27   418412 at *8.  However, as noted herein, California's state contract law principles
28   do not allow for a waiver argument to impose legal duties.

accruing interest and seeking to collect on the unpaid debt—was not the cause of Plaintiff's alleged harm (the loss of equity in his home and imposition of interest when he allegedly did not receive billing statements). Indeed, Plaintiff acknowledges he has been on notice since at least 2021 that the debt was not extinguished in bankruptcy and interest continued to accrue—yet he still has not made payments. *Martinez*, 2025 WL 3030982, at *4-5 (dismissing wrongful foreclosure claims where the plaintiff was on notice when the notice of default was sent to him that interest continued to accrue on his HELOC); *Taylor v. Bosco Credit, LLC*, No. 18-CV-06310-JSC, 2018 WL 6511150, at *3 (N.D. Cal. Dec. 11, 2018) ("*Taylor I*") (observing that the plaintiff mistakenly believed the lender had extinguished her second lien because she received no further statements or correspondence after defaulting but did receive a notice of default confirming debt was not extinguished).

Plaintiff's "lost equity" allegation is likewise speculative and insufficient to survive a motion to dismiss. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (quoting *Buttram v. Owens–Corning Fiberglas Corp.,* 16 Cal. 4th 520, 531 n. 4 (1997)) ("[T]o be actionable, harm must constitute something more than nominal damages, speculative harm, or the threat of future harm-not yet realized ..."). Because Plaintiff has not lost his home, he has not lost any equity.

## C.     Plaintiff Fails to State Federal and State Debt Collection Claims (Counts I, II, and III)

Plaintiff's FDCPA and RFDCPA claims are predicated upon allegations that Defendants violated 15 U.S.C. § 1692(e)(10), (e)(2)(a) and California Civil Code § 1788.17 by making false representations in the acceleration notices and other correspondence about the amount of the outstanding loan balance. FAC ¶¶ 80-81, 89-90, 99. These representations allegedly violated e(10) "because they included late fees and interest charges that were previously waived when SLS and other prior mortgage services did not send monthly mortgage statements" [*id*. at ¶ 83], violated

(e)(2)(a) where they "were previously waived in proof of claims filed with bankruptcy courts" [*id.* at ¶ 92] and violated the RFDCPA where they "had been previously waived" [*id.* at ¶ 99] (together, the "Debt Collection Claims").

Where, as here, the RFDCPA claim is derivative of the FDCPA claim, the claims will rise and fall together. *Oya v. Wells Fargo Bank, N.A.* No. 3:18-CV-01999-H-BGS, 2018 WL 5761486, at *5 (S.D. Cal. Nov. 2, 2018); *Kilker v. Real Time Resols., Inc.*, No. 4:25-CV-2456-YGR, 2025 WL 2492961, at *7 (N.D. Cal. June 2, 2025) (dismissing claim for RFDCPA where it was predicated on violations of federal statute and the court determined there was no violation of the federal statute).

All three of Plaintiff's claims must be dismissed because the alleged activity is not subject to the FDCPA, or by extension, the RFDCPA, as the Ninth Circuit finds that notices of intent to accelerate, like the one at issue here, are not debt collection as that term is defined under the statutes. Plaintiff's claims also fail as to BNYM because it is not a debt collector under the FDCPA. Finally, Plaintiff's second count for violation of 1692(e)(2)(a) is belied by judicially noticeable filings from his bankruptcy which demonstrate Defendants have not been seeking interest that was previously waived.

### 1. Plaintiff's Debt Collection Claims All Fail Because There is no Underlying Prohibited Act Since the Ninth Circuit Does Not Consider a Notice of Intent to Foreclose "Debt Collection"

Plaintiff's debt-collection claims relate to a November 5, 2024 notice of default and intent to accelerate sent by Shellpoint. *Id.* at 64.[6]

---

[6] While Plaintiff's FAC includes allegations related to a 2021 notice and a 2023 payoff statement [FAC ¶¶ 55, 58], the FDCPA and RFDCPA have a one-year statute of limitations. 15 U.S.C. § 1692k(d); Cal. Civ. Code § 1788.30(f). Accordingly, the only communication that that falls within the limitations period is the November 5, 2024 notice of default and intent to accelerate. FAC ¶ 64. All other alleged correspondence from Shellpoint occurred outside the one-year statute of limitations

1    Under Ninth Circuit law, notices of default and intent to accelerate are not
2   attempts to collect a debt and therefore do not violate the FDCPA.  Since California
3   law does not allow for a deficiency judgment, efforts to foreclose—like sending
4   notices of default and notices of sale—are not considered attempts to collect debt
5   under the FDCPA or RFDCPA.  *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858
6   F.3d 568, 571–72 (9th Cir. 2017) (internal citations omitted); *see also id.* at 573
7   ("The right to 'enforce' the security interest necessarily implies the right to send the
8   required notices; to hold otherwise would divorce the notices from their context.");
9   *Fitzgerald v. Bosco Credit, LLC*, No. 16-cv-01473-MEJ, 2017 WL 3602482, at *6
10  (N.D. Cal. Aug. 21, 2017) ("The Court previously granted Plaintiff leave to amend
11  to allege facts showing how T.D. Service went beyond the statutorily mandated
12  communications required for foreclosure. . . . . Nothing in the record suggests
13  Plaintiff possesses facts that show T.D. Service did more than enforce the Loan. . .
14  ."); *McGwire v. Specialized Loan Servicing LLC*, No. EDCV 24-0611 JGB (DTBX),
15  2024 WL 4783827, at *7 (C.D. Cal. Sept. 5, 2024) ("The Court also reiterates that
16  Defendant's communications with Plaintiff does not qualify as actionable debt
17  collection communications under the FDCPA, even if Plaintiff is correct that the
18  amount owed was misrepresented in these communications because the loan was
19  allegedly charged off."); *Gonzalez v. Specialized Loan Servicing, LLC*, 691 F. Supp.
20  3d 1162, 1176  (C.D. Cal. 2023) ("[A]llegations that Defendant violated the FDCPA
21  arising from the NOD are not sufficient to state a claim.").  Therefore, the November
22  5, 2024 notice of default and intent to accelerate was not an actionable attempt to
23  collect a debt as the term is defined under the FDCPA, and Counts I-III should be
24  dismissed.
25
26
27  _____
28  period and are not actionable here.

### 2.    Plaintiff's Debt Collection Claims Fail as to BNYM Because It Is Not Considered a Debt Collector

Plaintiff's debt collection claims against BNYM further fail because it is not considered a debt collector under the statute.

To be liable under the FDCPA, the defendant must be a "debt collector." *Bird v. Real Time Resols., Inc*., 183 F. Supp. 3d 1058, 1062 (N.D. Cal. 2016). "[I]ndividuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not considered FDCPA debt collectors. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 82 (2017) (resolving circuit split on issue); *Diaz v. Nationstar Mortg. LLC*, No. 17CV1607-MMA, 2018 WL 1071699, at *6 (S.D. Cal. Feb. 27, 2018).

Here, Plaintiff alleges BNYM purchased Plaintiff's HELOC in March 2016. FAC ¶ 49.  Plaintiff does not allege that BNYM has collected or attempted to collect "for another." *See id*. BNYM owns the loan and collects the debt for its own account. Plaintiff's allegation that BNYM "acted as a debt collector under the FDCPA because it uses interstate commerce in its business, the principal purpose of which is debt collection" is insufficient to place BNYM within the FDCPA's reach. FAC ¶ 18.  "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *Henson*, 582 U.S. at 83; *cf. Hart v. Select Portfolio Servicing, Inc.*, No. 24-36, 2025 WL 711536, at *2 (9th Cir. Mar. 5, 2025).  The FDCPA claim against must be dismissed as to BNYM.

### 3.    Plaintiff's Second Count for Violation of 15 U.S.C. § 1692 (e)(2)(a) Fails Because Judicially Noticeable Documents Confirm Defendants Are Not Seeking to Collect Interest Accrued Prior to Bankruptcy Filing

Plaintiff's § 1692(e)(2)(a) claim is predicated on his argument that the notice of intent to accelerate violated the statute to the extent it seeks to collect interest that was "previously waived in proof of claims filed with bankruptcy courts." FAC ¶ 92.

Plaintiff's FAC acknowledges that SLS filed a proof of claim indicating that

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-02671-BAS-DDL

no interest was past due or owed at the time of the bankruptcy filing as part of Plaintiff's 2016 Chapter 13 bankruptcy case.  FAC ¶ 51.  Plaintiff alleges that Defendants are now attempting to reach back and collect interest that accrued prior to Plaintiff's bankruptcy filing that had been "previously waived."  FAC ¶¶ 13, 92.

Judicially noticeable documents from Plaintiff's bankruptcy claim refute these allegations.  The August 2016 proof of claim Plaintiff excerpts from in his FAC shows Plaintiff's "total prepetition arrearage" as $0.00.  FAC ¶ 51; **RJN, Ex. 1**. Less than a year later, Defendants filed a Notice of Mortgage Payment Change which included a letter to Plaintiff outlining his interest charge.  **RJN, Ex. 2** (May 11, 2017 letter advising: "Effective 6/25/17, your new required monthly payment is $1923.68, figured at your current interest rate of 10.25000%. Interest rate changes may occur periodically according to the terms of your mortgage note and adjustments to your monthly payment will be made accordingly.").  A few years later, SLS then filed a Motion for Relief from the Automatic Stay on behalf of BNYM explicitly stating that it had been charging interest since Plaintiff's bankruptcy filing and indicating there was a total ***post-petition*** delinquency of $38,572.09 that it was seeking to collect. **RJN, Ex. 3** at 3 (March 30, 2020 filing showing breakdown of monthly payments accrued since filing of petition, not pre-petition).[7] These judicially noticeable documents demonstrate that Defendants have not sought to collect interest that was "previously waived in proof of claims filed with bankruptcy courts" and likewise did not waive any right to collect interest on Plaintiff's debt going forward.

Consequently, Plaintiff cannot allege that Defendants violated the FDCPA or RFDCPA and those claims must be dismissed with prejudice.

---

[7] "[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

**D.    Plaintiff Fails to Plead A UCL Claim (Count IV)**

Plaintiff's UCL claim is grounded in the same core allegation that Defendants have waived the right to assess interest based on their failure to send monthly statements and representations in the bankruptcy.  FAC ¶¶ 109-10.  He claims damages in the form of increased debt loads and decreased equity and also seeks corresponding injunctive relief to prevent the future collection of this debt.  *Id.* at ¶¶ 112, 114.

Plaintiff's UCL claim fails for the same reason that his debt collection claims fail: his waiver theory is not viable and the notice of intent to accelerate was not an unlawful debt collection communication.  *See supra* §§ IV.A, IV.C.  Plaintiff's claim also fails for threshold reasons and under the UCL's unlawful and unfair prongs.[8]

**1.    Plaintiff Cannot Meet the UCL's Threshold Requirements**

As a threshold problem, Plaintiff lacks standing to bring a UCL claim, which requires him to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Court*, 51 Cal. 4th 310, 322 (2011).  A plaintiff does not have standing if he would have suffered the same harm regardless of whether defendant complied with the law.  *See Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007).

Here, Plaintiff fails to allege any economic injury caused by Defendants' conduct.  Plaintiff alleges that Defendants' UCL violations "have caused an increase in [Plaintiff's] debt loads and a decrease in their home equity."  FAC ¶ 112.  Plaintiff cannot show that Defendants' alleged unfair business practices—assessing contractually owed interest on the HELOC without sending statements—caused

---

[8] Upon amendment, Plaintiff dropped his UCL claim with respect to the fraudulent prong.

Plaintiff's alleged damages.  To the contrary, it was Plaintiff's default (dating back to 2010) and failure to make mortgage payments for years that has caused his overall debt to increase, and correspondingly, his home's equity to decrease.  *See supra* § IV.B.  The source of Plaintiff's obligation to make payments, including interest, is Plaintiff's loan contract, not his monthly statements (and making such payments would have prevented the balance from increasing). *Cf. Martinez*, 2025 WL 3030982, at *1 ("Plaintiff filed for chapter 7 bankruptcy and received a discharge on August 11, 2008.  Plaintiff mistakenly believed that the bankruptcy extinguished his loan obligations to defendants") (internal citation omitted).  For this reason alone, Plaintiff's claim fails.  *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010); *Granados v. Wharton Note Co.*, No. 23-CV-02948-HSG, 2024 WL 5320157, at *2-3 (N.D. Cal. Dec. 20, 2024) (dismissing UCL claim because plaintiff could not plausibly show that defendant's unfair business practices, rather than her own failure to make her mortgage payments, led to the threatened foreclosure of her home); *Price v. Grand Bank For Sav., FSB*, No. 18CV440-LAB (NLS), 2018 WL 4852198, at *5 (S.D. Cal. Oct. 4, 2018) (dismissing UCL claim when plaintiff failed to plead sufficient facts to support a causal connection between the violation and her heart attack as a result of the foreclosure proceedings).  Therefore, Plaintiff has failed to allege Defendants' conduct caused him any economic injury to support standing.

Further, in the context of the UCL, Plaintiff is only entitled to restitution, which is limited to the return of property or funds in which Plaintiff has an ownership interest.  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005).  But Plaintiff does not identify any property or funds that were wrongfully taken.  Indeed, Plaintiff alleges he did not pay any interest.  FAC ¶ 114 (only seeking restitution as to class members who paid "illegal fees or charges").  He cannot establish a UCL violation.

### 2. Plaintiff Fails to Allege Facts Sufficient to State a Claim Under Any of the UCL Prongs

Plaintiff's claim also fails because: (1) there is no violation of an underlying statute to meet the "unlawful" prong, and (2) Plaintiff could have avoided his injuries, and thus there are no practices that meet the "unfair prong."

**Unlawful Prong:** Because Plaintiff's FDCPA and RFDCPA claims fail, Plaintiff's UCL claims must fail. *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000) ("A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition."); *Martinez,* 2025 WL 3030982, at *5; *Price,* 2018 WL 4852198, at *5. Because this prong depends on failed claims, it must be dismissed.

**Unfair Prong:** Plaintiff fails to state a UCL claim under the unfair prong because Plaintiff could have avoided his injury. The unfair prong prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016). And "an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and *is not an injury the consumers themselves could reasonably have avoided*." *Id.* (emphasis added). For the same reasons Plaintiff lacks standing, he cannot allege his injury could not reasonably be avoided. Plaintiff cannot show Defendants' alleged unfair business practices—assessing contractually owed interest to the HELOC of which he had notice without sending statements—caused Plaintiff's alleged damages. It was Plaintiff's default and failure to make mortgage payments beginning in at least 2010 that caused his debt to increase, and correspondingly, his home's equity to decrease. Therefore, Plaintiff has not sufficiently alleged his injury.

**E.    Plaintiff's RESPA Claim (Count VI) Against Shellpoint Fails Because He Does Not Plead the Essential Elements**

Plaintiff's individual RESPA claim, brought against Shellpoint pursuant to 12 U.S.C § 2605(e)(2) and 12 C.F.R. § 1024.36(d), clarifies that he only submitted one potential QWR.  *Compare* FAC ¶ 123 (alleging Plaintiff "submitted a qualified written request" to Shellpoint's predecessor in interest SLS) *with* ECF 1 ¶ 13 (alleges Plaintiff sent "at least two Qualified Written Requests").  He still fails to attach the purported QWR or any response and does not provide much detail about it.

Plaintiff alleges SLS violated RESPA: (1) "by failing to make appropriate corrections to Plaintiff's account, including removing the improper interest and fees assessed to his loan"; (2) "by refusing to investigate and explain why the requested corrections would not be made"; and (3) "by failing to provide Plaintiff with the information he requested or to explain why the requested information was unavailable." *Id.* ¶¶ 124-26.

Plaintiff's RESPA claim must be dismissed for three separate reasons.  First, it is insufficiently pled.  Second, as the judicially noticeable QWR itself demonstrates, it is not subject to RESPA because it does not relate to servicing. Third, Plaintiff cannot establish an entitlement to actual or statutory damages here.

**1.    Plaintiff's RESPA Claim Is Inadequately Pled**

As a threshold problem, Plaintiff fails to sufficiently allege his RESPA claim. *See, e.g.*, *Delino*, 628 F. Supp. 2d at 1231–32 (dismissing RESPA claim when "Plaintiff does not allege . . . how Defendants failed to respond to such requests"); *Watson v. Bank of Am., N.A.*, No. 16cv513-GPC(MDD), 2016 WL 3552061, at *6 (S.D. Cal. June 30, 2016) (a plaintiff must allege facts as to why a response was inadequate; general statement inadequate).

Here, in conclusory fashion, Plaintiff alleges that SLS/Shellpoint failed "to provide Plaintiff with the information he requested or to explain why the requested information was unavailable."  FAC ¶ 126.  Plaintiff does not provide any detail or

specificity about what information or documents SLS/Shellpoint failed to provide. His claim should be dismissed on these grounds alone.

### 2. RESPA Liability Cannot Attach to the QWR Because It Does Not Relate to Servicing of the Loan

Even if the FAC were to adequately allege the QWR at issue, it is not actionable as it does not relate to servicing. To trigger a servicer's duty to respond or be an actionable claim, the inquiry or request must seek information related to servicing. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 n. 4 (9th Cir. 2012) ("Section 2605(e)(1)(B), which defines what is a qualified written request, does not refer to 'information relating to . . . servicing.' Instead, that requirement derives from § 2605(e)(1)(A), which requires, ***as conditions for triggering the duty to respond***, both (1) that the letter is a qualified written request and (2) that it requests information relating to servicing.") (emphasis added). A servicer's duty to respond, as explicitly determined by the Ninth Circuit, arises only when an inquiry or QWR relates to servicing. *Id.* at 666; *Aazami v. Wells Fargo Bank, N.A.,* No. 3:17-cv-01564-BR, 2019 WL 281286, at *13-14 (D. Or. Jan. 22, 2019) (citing 12 C.F.R. § 1024.36(a) and holding that alleged RFIs are "not QWR/RFIs within the meaning of RESPA and Regulation X because they are not information about loan servicing" and so defendant is not required to respond).

"Servicing" is statutorily defined as "receiving any periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required by the terms of the loan." 12 U.S.C. § 2605(i)(3). It "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano*, 704 F.3d at 666-67*; see also Junod v. Dream House Mortg. Co.,* No. CV 11-7035-ODW(VBKx), 2012 WL 94355, at *4 (C.D. Cal. Jan. 5, 2012) ("[requests] relating to the original loan

1    transaction and its subsequent history" do not qualify as QWRs under RESPA);

2    *Tamburri v. Suntrust Mortg., Inc.,* No. C–11–2899 EMC, 875 F.Supp.2d 1009, 1014

3    (N.D. Cal. June 21, 2012) ("Because RESPA is not designed to cover disputes over

4    the ownership and validity of a loan, Plaintiff's purported damages arising from such

5    disputes are not cognizable under RESPA"); *Medina v. Wells Fargo Bank*, No.

6    EDCV19883PSGKKX, 2019 WL 6140481, at *4 (C.D. Cal. Sept. 17, 2019) (since

7    request related "to loan modification or mitigation, rather than loan servicing,

8    Plaintiffs fail to state a RESPA claim"); *cf. Derusseau v. Bank of Am.*, *N.A.*, No. 11

9    CV 1766 MMA JMA, 2011 WL 5975821, at *4 (S.D. Cal. Nov. 29, 2011) (finding

10   a QWR overly broad where it "request[ed] a 'complete life of loan transactional

11   history,' the 'Transaction Codes for the software platform of the Servicer,' and the

12   'Key Loan Transaction history, bankruptcy work sheet (if any), or any summary of

13   all the accounts in an XL spreadsheet format'").

14        Plaintiff's QWR dated May 22, 2023, comes from a law firm named Equity

15   Legal and asks for information related to the loan during a time in which the property

16   was in foreclosure proceedings. Baiardo Decl. at Ex. A.[9]  Setting aside that the QWR

17   does not address the imposition of interest post-bankruptcy or the sending of

18   statements, it is not an actionable QWR under RESPA because a servicer's duty to

19   respond to a request or inquiry is only triggered where the request or inquiry relates

20   to servicing.  The letter requests information related to ownership of the loan, loan

21   documents, appraisals, payment histories, and a payoff during a time when Plaintiff

22   wanted this information to stave off foreclosure proceedings.  *See Aazami,* 2019 WL

---

24   [9] The Court may consider the QWR under the doctrine of incorporation by reference.
     "Even if a document is not attached to a complaint, it may be incorporated by

25   reference into a complaint if the plaintiff refers extensively to the document or the
     document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d

26   903, 908 (9th Cir. 2003).  "The doctrine prevents plaintiffs from selecting only

27   portions of documents that support their claims, while omitting portions of those
     very documents that weaken—or doom—their claims." *Khoja,* 899 F.3d at 1002.

28

281286, at *12-14; *Weiss v. Wells Fargo Bank, N.A.,* No. 19 C 4947, 2020 WL 469615, at *5 (N.D. Ill. Jan. 29, 2020). This request for information only came from his foreclosure counsel after SLS sent him multiple notices that his mortgage was being referred to foreclosure, not as "servicing" requests. *See, e.g.,* FAC ¶¶ 55-59; *McCoy v. Wells Fargo Bank, N.A.,* No. 1:20-CV-00176-CL, 2021 WL 4451423, at *4 (D. Or. July 21, 2021), *report and recommendation adopted,* No. 1:20-CV-00176-CL, 2021 WL 4449967 (D. Or. Sept. 28, 2021) ("[M]ortgage loan servicers only have an obligation to provide a written response to inquiries under RESPA or Regulation X if the inquiry relates to the servicing of the loan.").

The QWR has nothing to do with any servicing error related to whether interest was still accruing post-bankruptcy. This is not servicing. Accordingly, the QWR is not actionable under RESPA.

### 3.    Plaintiff Fails to Plead Recoverable Damages Under RESPA

Plaintiff's RESPA claim must also be dismissed because Plaintiff cannot establish either actual or statutory damages. RESPA provides for (1) actual damages as a result of a failure to respond to an inquiry relating to loan servicing and (2) statutory damages not to exceed $2,000 where there is a "pattern or practice of noncompliance." *Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1221 (S.D. Cal. 2021) ("[T]he statute entitles the borrower to recover actual damages and, if there is a 'pattern or practice of noncompliance,' statutory damages. . . .").

**No Actual Damages:** Plaintiff does not allege any viable actual damages in support of his RESPA claim. *Smith v. Specialized Loan Servicing, LLC*, No. 16CV2519-GPC(BLM), 2017 WL 1711283, at *5 (S.D. Cal. May 3, 2017) ("Actual damages must include harms caused by RESPA violations, and 'not harms generally resulting from a plaintiff's default and the foreclosure of his or her home.'"). In support of this claim, Plaintiff only alleges lost equity and emotional distress related to the potential foreclosure of his home. FAC ¶ 127. As explained above, this is

insufficient to support his damages claim because he has been in default since 2010, long before any of the conduct at issue in this case.  Moreover, Plaintiff concedes he only sent the purported QWR *after* receiving notices of imminent foreclosure and learning of the high balance with the accruing interest.  FAC ¶¶ 55-59; *Robinson v. Bank of Am., N.A.*, No. 21-CV-00110-AJB-DEB, 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022) (damages must be causally related to the RESPA violation); *Apodaca v. HSBC Bank USA, Nat. Ass'n*, No. 10CV307 WQH, 2010 WL 1734945, at *4 (S.D. Cal. Apr. 27, 2010) (dismissing RESPA claim when QWR was sent over nine months after his property was sold at a foreclosure because the plaintiff's loss "cannot be attributed to Defendant's alleged failure to respond to the QWR nine months later"); *see also Guidi v. Paul Fin., LLC*, No. 13-CV-01919-LHK, 2014 U.S. Dist. LEXIS 2249, at *17 (N.D. Cal. Jan. 7, 2014) ("[B]y the time Plaintiffs sent their QWR to Roundpoint, Plaintiffs likely had already sustained additional penalties, fees, and interest, thus suggesting that Plaintiffs' alleged damages could not have been caused by any alleged failure by Roundpoint to respond to the QWE in early 2013."); *Naimoli v. Ocwen Loan Serving, LLC*, 613 F. Supp. 3d 681, 699 (W.D.N.Y. 2020), *rev'd on other grounds*, 22 F.4th 376 (2d Cir. 2022) ("damages that occurred before the alleged RESPA violations . . . could not have been proximately caused by the violations").

**No Pattern or Practice**: Trying to salvage his RESPA claim by pleading that Shellpoint has an alleged pattern and practice of noncompliance with RESPA, Plaintiff alleges the Consumer Financial Protection Bureau's consumer complaint portal has 14,404 complaints against Shellpoint as of January 13, 2026 and that "discovery will reveal" the complaints were similar to the issues presented here. FAC ¶ 130.

First, Plaintiff cannot establish a pattern or practice of noncompliance with RESPA entitling him to statutory damages where he has no individual RESPA claim. Second, simply alleging other borrowers have filed other generic complaints against

the same company is insufficient to plead a pattern or practice of noncompliance. Conclusory allegations of a pattern or practice are insufficient. *Lal v. Am. Home Serv., Inc.,* 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (dismissing a RESPA because Plaintiffs "flatly claim a pattern of noncompliance but state no facts . . ."). And specific allegations of "one or two RESPA violations do not establish a pattern or practice." *Smith*, 2017 WL 1711283, at *8 (finding the plaintiff had stated a claim by sufficiently alleging a pattern or practice of noncompliance based on seventeen allegedly unlawful letters that failed to state whether the loan review had completed); *Robinson*, 2022 WL 837073, at *8 (rejecting the plaintiff's argument that he "believes that other similarly situated borrowers have requested audio recordings or transcripts of telephone calls between themselves and BANA only to be likewise denied access to that information by BANA" "but provides no factual support for this claim"). And third, stating that discovery will reveal that claim has merit is insufficient at the pleading stage. "[S]imply stating a legal conclusion with the promise to later produce facts is tantamount to simply stating a bare legal conclusion. This is insufficient under the Rule 12(b)(6) pleading standard. A plaintiff cannot rely simply on stock legal conclusions, but must allege facts that are sufficient to 'raise a right to relief above the speculative level.'" *Lal*, 680 F. Supp. 2d at 1223 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## F.    Plaintiff's Declaratory Judgment Claim (Count V) Against BNYM Is Not Tied to A Viable Underlying Cause of Action

Plaintiff's Declaratory Judgment claim against BNYM seeks a declaration that he does not owe certain fees and interest that were assessed unlawfully because Defendants have waived their right to collect those fees and interest. FAC ¶ 116. Because Plaintiff does not state a viable underlying cause of action as the basis for his requested ***remedy*** of declaratory relief, the claim fails, and the analysis can stop there. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("the Declaratory Judgment Act does not provide an affirmative cause of action where

none otherwise exists"); *see also Householder v. Specialized Loan Servicing LLC*, No. CV 21-1008-DMG (SKX), 2021 WL 6104179, at *5 (C.D. Cal. June 3, 2021).

## V.    CONCLUSION

Plaintiff has been in default for fifteen years.  He concedes that he has known for at least four years that his obligations on his HELOC continued to exist as an *in rem* liability tied to his property following his two bankruptcies.  Yet he chose to bring yet another complaint asserting a revised set of potpourri claims hoping one will stick and wipe away his debt.  Because there is no underlying viable legal theory supporting these claims, Defendants respectfully request the Court dismiss the FAC with prejudice.

DATED: February 17, 2026          MCGUIREWOODS LLP


By:  */s/ Alicia A. Baiardo*_____
        Alicia A. Baiardo
        Molly M. White
        Brian E. Pumphrey (*pro hac vice forthcoming*)
        Melissa O. Martinez (*pro hac vice forthcoming*)

        *Attorneys for Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon f/k/a The Bank of New York as Indenture Trustee for CWHEQ Revolving Home Equity Loan Trust, Series 2007-D*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2026, a copy of the foregoing **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** was filed electronically with the Clerk of the Court for the Southern District of California by using the CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

<u>/s/ Alicia A. Baiardo</u>
*Alicia A. Baiardo*